**MGM GRAND HOTEL, INC., a Nevada Corporation, Plaintiff,**

v.

**IMPERIAL GLASS CO., a co-partnership consisting of Gordon Ross and I. M. Zerman, co-partners, and United Pacific Insurance Company, a Washington Corporation, Defendants.**

**Civ. No. LV–2032 RDF.**

United States District Court,
D. Nevada.
Dec. 17, 1974.

Wiener, Goldwater & Galatz, Las Vegas, Nev., for plaintiff.

Tyre & Kamins, Peter M. Appleton, Los Angeles, Cal., Rogers, Monsey, Lea, Woodbury & Sheehan, Las Vegas, Nev., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROGER D. FOLEY, Chief Judge.

### FACTS

Plaintiff initiated the instant suit on April 20, 1973. As a jurisdictional base plaintiff relies on diversity of citizenship in that it is a Nevada corporation, defendant Imperial Glass Company is a California corporation, and defendant United Pacific Insurance Company is a Washington corporation. Since all defendants were transacting business within the State of Nevada, in personam jurisdiction over them was obtained through the use of NRS § 14.065. (The Nevada "long-arm" statute.) Plaintiff has alleged damages in excess of $10,000.

Plaintiff's alleged cause of action against defendants arose in the following fashion. On June 19, 1972, plaintiff and defendant Imperial Glass Company (hereinafter Imperial) entered into a contract whereby Imperial was to act as a subcontractor and perform certain services in conjunction with the construction of plaintiff's hotel and casino facility in Las Vegas, Nevada. According to the terms of this agreement, Imperial was to furnish to plaintiff an acceptable surety bond to insure the performance of Imperial's contractual duties. Imperial procured this surety bond from defendant United Pacific Insurance Company (hereinafter United Pacific) and furnished it to plaintiff. On April 16, 1973, after Imperial had performed a substantial amount of work on the project, plaintiff terminated the aforementioned contract alleging that

Imperial had performed its work in a shoddy manner and had failed to comply with the applicable construction completion schedule.

Plaintiff further alleged that as a result of this breach it was forced to hire another sub-contractor to finish the remainder of Imperial's work at a cost in excess of $10,000. Plaintiff's allegation directed towards defendant United Pacific is that it failed to reimburse plaintiff for the damage caused by Imperial's breach or correct the construction defects caused by the breach.

On June 18, 1973, defendants filed their answer to plaintiff's complaint, specifically denying the majority of plaintiff's allegations and setting forth certain affirmative defenses. In addition, defendants Gordon Ross and I. M. Zeman, co-partners, dba Imperial Glass Company, filed a counter-claim against plaintiff and a third-party complaint against third-party defendants Taylor Construction Company (hereinafter referred to as Taylor), Morris M. Mason, and Stuart J. Mason. In their counter-claim defendants allege that they have suffered damages in excess of $22,000,-000.00.

On May 14, 1974, defendants and third-party plaintiffs filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure praying that MGM's complaint be dismissed. This motion for summary judgment was based on the ground that,

"  .  .  .  Plaintiff cannot maintain this action because of Plaintiff's failure and inability to allege and prove that it was a duly licensed contractor under the laws of the State of Nevada during all times when it was acting in the capacity of a contractor within the State of Nevada, in connection with its performance of the contract on which Plaintiff's complaint is based." Defendant's motion for summary judgment p. 2.

After the receipt of all appropriate responsive and reply memorandums of points and authorities the motion for summary judgment was set for oral argument on November 7, 1974. Having heard oral argument on the issue, and no cross motion for summary judgment having been filed by plaintiff, by order of this Court dated November 7, 1974, defendants and third-party plaintiffs' motion for summary judgment stands submitted.

ISSUE

Should the motion for summary judgment be granted?

DISCUSSION

■ (I) IS THERE A GENUINE ISSUE OF MATERIAL FACT PRESENTED BY THE INSTANT CASE? The procedure involved in granting a motion for summary judgment allows the cause to be removed from the trier of fact and decided by the court as a matter of law if there are no genuine issues of material fact presented by the case. Rule 56 of the Federal Rules of Civil Procedure,

"  .  .  .  permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, answers to interrogatories, and admissions on file show that there are no genuine issues of material fact to be tried." 6 Moore's Federal Practice ¶ 56.04[1], p. 2058.

The motion for summary judgment may rest entirely on the pleadings, or it may be supported by affidavits. Once the movant has made and supported his motion in this fashion a duty devolves on the opposing party to affirmatively show that there are genuine issues of material fact to be tried in the case. As the Ninth Circuit has noted:

"When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleading. As

stated in Rule 56(e), his response by affidavits or otherwise must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if otherwise appropriate, shall be entered against him. (Citations omitted.) One against whom a motion for summary judgment is filed is therefore under a duty to show that he can produce evidence at the trial, and is not entitled to a denial of that motion upon the unsubstantiated hope that he can produce such evidence at the trial." Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635, 643 (9th Cir. 1969).

If affidavits are filed either in support of or opposition to the motion for summary judgment, these affidavits,

" . . . must be made on the personal knowledge of the affiant, set forth facts that would be admissible in evidence, and show affirmatively that affiant is competent to testify to the matters stated therein." See 6 Moore's Federal Practice ¶ 56.22[1], p. 2803, and Rule 56(e) F.R.C.P.

In addition to memoranda of points and authorities, both parties to the instant case have filed affidavits. Upon examination it appears that these affidavits meet the aforementioned test.

■ The instant case presents this Court with two key issues. The first of these is clearly an issue of law, hence, it presents no difficulty in the context of a motion for summary judgment. The first issue arises out of Section 16.12 of the agreement entered into between plaintiff MGM and defendant Imperial. This section provides that, "[T]his Agreement shall be governed by the laws of the State of California applicable to contracts made or performed therein." The issue presented by this section is then one of choice of law, and as such clearly an issue of law, thus, the fact that the parties differ as to its applicability to the case at bar has no bearing on defendants' motion for summary

judgment. This issue will be discussed in greater detail, infra.

The second key issue in the instant case is no less controverted by the opposing parties than the first issue. This second key issue can more properly be classified as a number of sub-issues that revolve around a determination of plaintiff MGM's status under the Nevada contractor licensing statutes. The parties are in complete disagreement as to whether the second key issue in the case is more properly classifiable as an issue of fact or an issue of law. By its very nature, if it qualifies as an issue of fact it is clearly a genuine issue of material fact, thus, summary judgment would be improper. If, however, it is more properly classified as an issue of law, the instant case is ripe for summary judgment.

The main thrust of defendants' motion for summary judgment is based upon the provisions of NRS § 624.320. This section provides that:

"No person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, engaged in the business of acting in the capacity of a contractor shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that such person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid." NRS § 624.320.

Defendants allege that at the time plaintiff caused the MGM Grand Hotel to be built in Las Vegas, Nevada, plaintiff was: (1) acting as a contractor, (2) not exempt from the provisions of the Nevada contractor licensing statutes, and (3) required to be licensed as a contractor under the provisions of those stat-

utes. If defendants' allegations are accepted by the Court, they next allege that the provisions of NRS § 624.320, quoted above, foreclose plaintiff from suing upon the alleged breach of contract arising from the construction of the hotel. Plaintiff, of course, controverts each of defendants' allegations, and, in addition, alleges that the issue of its status under the Nevada contractor statutes is a genuine issue of material fact. This does not appear to be the case.

Initially it must be noted that the question of plaintiff's possession, at any time, of a valid Nevada contractor's license is not at issue in the instant case. Defendants have alleged, and plaintiff has admitted, that, at no time relevant to this action, plaintiff possessed a valid Nevada contractor's license. Plaintiff's explanation of this fact is its allegation that it was not required, under Nevada law, to possess such a license.

The statutes regulating and classifying building contractors in Nevada are set forth in Chapter 624 of the Nevada Revised Statutes. In defining the term "contractor" NRS § 624.020(2) notes that:

"Within the meaning of this chapter, a contractor is any person, except a licensed architect or a registered professional engineer, acting solely in his professional capacity, who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to, or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. Evidence of the securing of any permit from a governmental agency or the employment of any person on a construction project shall be accepted by the board or any court of this state as prima facie evidence that the person securing such permit or employing any person on a construction project is acting in the capacity of a contractor under this chapter." NRS § 624.020(2).

The chapter goes on to note that:

" 'Person' as used in this chapter includes an individual, a firm, a copartnership, a corporation, an association or other organization, or any combination of any thereof." NRS § 624.030.

Although the section defining "contractors" appears to be all inclusive, certain persons are exempted from the operation of the chapter, to wit:

"Owners of property building or improving residential structures thereon for the occupancy of such owner and not intended for sale. . . . Owners of property, the primary use of which is as an agricultural or farming enterprise, building or improving structures thereon for the use or occupancy of the owner and not intended for sale or lease." NRS § 624.330(4), (8).

In further defining the term "contractor" the State Contractors Board has issued regulations classifying types of contractors. For example, under the heading Primary Classification E—Owners—the regulations provide that,

"An Owner's License is designed for persons not regularly engaged in the construction business who need a contractor's license for the purpose of building or improving their own property (other than single family residences occupied by the owner and not intended for sale). An Owner's License will be issued for a specific property or properties in those classifications for which the owner is deemed qualified." See Rules and Regulations of the State of Nevada State Contractors Board, Article III, p. 12 (revised July 1973).

If a "person", as defined in NRS § 624.030, acts in the capacity of a contractor, without possessing the required license, or being exempt therefrom, such action is deemed unlawful. See NRS § 624.230. Under the statutes two possible consequences can flow from such unlawful action. Each of the potential consequences is punitive in nature. The first consequence is that,

"No person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, engaged in the business of acting in the capacity of a contractor shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that such person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid." NRS § 624.320.

The second consequence provides that,

"Any person violating any of the provisions of this chapter shall be punished by a fine of not more than $500." NRS § 624.360.

■ The activities, duties, and responsibilities of each party in the instant case pertaining to the construction of plaintiff's hotel are set forth in certain contracts. Neither side of the dispute has alleged that the other has acted in derogation of the contractual provisions. The parties agree that the relationships structured by the contractual provisions existed as defined by the terms of the agreements. Any attempt to show otherwise would, of course, be barred by the operation of the Parol Evidence Rule. The parties' disagreement centers around the effect of the contractual provisions under Nevada law; i. e., the parties agree that plaintiff acted in the capacity of owner as provided for by the contracts; the conflict arises over whether or not plaintiff was required to have a Nevada contractor's license to act in that fashion. Thus framed, it is clear that the issues of whether plaintiff acted in the capacity of a contractor, or was required to obtain a Nevada contractor's license, or was exempt from such requirement, are issues of law to be resolved by applying the pertinent Nevada Statutes to the facts presented. The facts surrounding plaintiff's activities in constructing its hotel are not disputed, only the legal effect of these activities under Nevada law. This being the case, this Court finds that the instant case presents no genuine issue of material fact, thus it is ripe for summary judgment.

## (II) THE CHOICE OF LAW ISSUE:

As noted supra, Section 16.12 of the contract entered into between plaintiff MGM and defendant Imperial provides that the agreement shall be governed by California law. What the Court is presented with then is the situation where the parties, a Nevada corporation and a California co-partnership, have chosen California law to govern a contract to be performed entirely within the State of Nevada. The file in the instant case is silent as to where this particular contract was entered into.

■■ As a general rule the parties to a given contract are always free to choose the law that will govern their contractual rights and duties. However, since this is a general rule it is subject to exceptions. The Restatement of the Law 2d notes that:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either . . .

(b) application of the law of the chosen state would be contrary to a

fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement of the Law 2d, Conflict of Laws 2d, § 187(2), (2)(b)(1971).

That which is the "fundamental policy" of a state is not, of course, susceptible to easy definition, rather it must be determined on a case by case basis by examining the law of the state in question. However, before that question is reached the provisions of § 188 must be applied to determine if Nevada would be the state of the applicable law in the absence of an effective choice of law by the parties. Section six of the Restatement provides general choice of law principles. This section provides in pertinent part that:

" . . . the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied." Restatement of the Law 2d, id. § 6(2).

Section 188 further provides that:

"In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into ac-count in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties. . . . " Restatement of the Law 2d, id. § 188(2).

As noted supra, the place of contracting is unknown in the instant case, as is the place of negotiation. However, the place of performance, the location of the subject matter, and the place of incorporation and place of business of one of the parties is found in Nevada. It seems clear then that Nevada has a substantial number of contacts with the contract involved in the instant case. On the other hand, the only California contact that clearly appears is that it is the domicile of one of the parties to the contract. It seems clear then that if the parties in the instant case have not made an effective choice of law, then under the principles of §§ 6 and 188 of the Restatement, Nevada law should be applied to test their rights and liabilities under the contract.

The final analysis of the parties' choice of law depends on § 187. If the parties have made an effective choice then California law must be applied. However, if California law is contrary to a fundamental policy of the law of Nevada, when it appears that Nevada has a materially greater interest in the contract in question than California, then Nevada law must be applied. Thus, an examination of the laws of the two states is necessary. It is clear from this examination that the laws are contrary. Chapter nine of the California Business and Professions Code is similar in scope and effect to Chapter 624 of

the Nevada Revised Statutes. Both chapters provide for the regulation and licensing of contractors. The major difference in the California Code that specifically pertains to the case at bar is found in § 7044. This section provides that:

"This chapter does not apply to an owner of property building or improving structures thereon, or appurtenances thereto, who contracts for such a project with a contractor or contractors licensed pursuant to this chapter." Cal.Bus. and Prof.Code § 7044 (1973).

It is undisputed in the instant case that Taylor Construction Company, who acted as managing contractor for plaintiff in the construction of plaintiff's hotel, was at all pertinent times a licensed contractor so, arguably, if California law were applied to the instant contract plaintiff would be exempt from the contractor licensing requirements. As noted supra, such is not the case under Nevada law. Even though an owner contracts with a licensed contractor he is also required to be licensed as a contractor unless exempt from the provisions of Chapter 624. The question still remains as to whether or not this statutory difference represents a fundamental policy of Nevada law.

■ Since jurisdiction in the instant case is based on diversity of citizenship, this Court is, in effect, sitting as a Nevada court and in doing so it must apply the law as it believes its Nevada counterpart would. It is clear from an examination of NRS Chapter 624 that its provisions delineating the consequences that result when an unlicensed, non-exempt person acts as a contractor are designed to be punitive in nature. The deterrent effect of not allowing such an unlicensed person to sue on his contract entered into in derogation of the statute is obvious. It is equally obvious that in passing these statutes the Nevada Legislature desired to protect the public at large, including specialized segments of the public such as materialmen and sub-

contractors, from the pitfalls that might be encountered in dealing with unlicensed contractors. Even though it can be inferred that one of the prime motives behind the licensing statutes was to insure that those who act in the capacity of contractors be financially stable, and there is no allegation in the instant case that plaintiff was not, the statutory command is clear. If one acts in the capacity of a contractor without a license he is subject to the penalties provided for by the chapter. It is clear then that the punitive provisions of Chapter 624 express a strong public policy of the State of Nevada. This legislative desire to punish those who ignore the statutory command can even be termed a fundamental policy. To allow parties who enter into a contract to evade these statutory provisions by providing that the laws of a state with a lesser degree of interest shall control their contractual relations is clearly in opposition to this fundamental policy, particularily when the subject matter and performance of the contract are to remain entirely within this state. While sitting, in effect, as a Nevada court, this Court cannot allow the fundamental policy behind the Nevada statutes to be circumvented in this fashion. Even though the parties in the instant case have specified that California law is to govern their contractual relations, this Court finds that to do so, in the area of the contractor licensing provisions, would be to circumvent a fundamental policy of Nevada, hence Nevada law must be applied to determine if the plaintiff was required to secure a contractor's license and, if so, the effect of its failure to do so.

(III) THE APPLICATION OF NEVADA LAW TO THE FACTS OF THE INSTANT CASE: As noted supra, plaintiff has admitted that at no time relevant to the case at bar did it possess a valid Nevada contractor's license. Therefore, in applying Nevada law to

the case at bar, four questions must be answered: (1) was plaintiff acting as a contractor, (2) was plaintiff required to possess a valid Nevada contractor's license in order to construct its hotel, (3) was plaintiff exempt from the provisions of the licensing statutes, and (4) if plaintiff was required to possess such a license, what is the effect of its failure to do so?

In order to determine if plaintiff was acting as a contractor within the scope of NRS Chapter 624 it is necessary to examine certain of the contractual agreements plaintiff entered into in order to facilitate the construction of its $100,000,000. hotel and casino complex. Normally, when an owner desires to construct a facility such as plaintiff's hotel he will hire a general contractor who will in turn contract with various sub-contractors. The general contractor normally takes all financial responsibility for the entire project. Even though the owner is the one ultimately paying all costs, the general contractor is the one looked to by the materialmen, suppliers, sub-contractors, etc., for payment. Plaintiff in the instant case elected not to follow this established procedure in the construction of its hotel. Instead, plaintiff chose to utilize what is commonly referred to as the managing contractor concept. Pursuant to this plan plaintiff hired cross-defendant Taylor Construction Company to be the managing contractor of the project. A copy of the agreement between plaintiff and Taylor has been made a part of the record in the instant case, as has a copy of the agreement between plaintiff and defendant Imperial.

An examination of the MGM/Taylor contract discloses the following information: (1) Taylor was employed by plaintiff, ". . . in a consulting and supervisory capacity to supervise and administer the construction of the project." See MGM/Taylor contract, p. 1. (2) Taylor was to be paid a flat fee for these services. Id. § 2.01. (3) All sub-contracts, etc., were to be made on plaintiff's behalf and plaintiff, but not Taylor, would be responsible for payment thereof. Id. § 2.03. (4) The agreement created no contractual obligations between Taylor and the various sub-contractors unless Taylor specifically assumed the obligation in writing. Id. § 15.02.

Likewise, an examination of the MGM/Imperial contract sheds some light on plaintiff's role in the construction of its hotel. The following information is disclosed: (1) Even though Taylor's name appears on the contract it is clear that Taylor entered into the contract for the benefit of plaintiff. See MGM/Imperial contract p. 1. See also p. 32 where the contract was signed by Taylor as plaintiff's representative, and also by plaintiff's chairman of the board. (2) Plaintiff agreed to pay Imperial for its services on the project. Id. § 1.02. (3) Even though Taylor had the authority to supervise Imperial's work, plaintiff maintained the ultimate control. Id §§ 5.04, 5.08, 8.01, 10.01, 10.02, 13.01.4. (4) The agreement created no contractual relationship between Taylor and Imperial. In addition, plaintiff, and not Taylor, was financially liable to Imperial. Id. § 16.02.

The aforementioned contracts clearly indicate that plaintiff maintained the ultimate financial responsibility and control over the project. Additional evidence supports this conclusion. The deposition of plaintiff's chairman of the board, Mr. Fred Benninger, indicates that he participated in the negotiation, and made the final approval of the contracts entered into with the various sub-contractors on the project. See defendants' exhibit 1, pp. 16–17, attached to their motion for summary judgment. It is clear from the facts presented that plaintiff fits the description of a "contractor" as provided for by NRS § 624.-020(2) noted supra, since it appears that plaintiff undertook through others (i. e., Taylor) to construct its hotel. In

addition the file in the instant case contains prima facie evidence that plaintiff was acting as a contractor. In pertinent part NRS § 624.020(2) provides that:

"Evidence of the securing of any permit from a governmental agency or the employment of any person on a construction project shall be accepted by the board or any court of this state as prima facie evidence that the person securing such permit or employing any person on a construction project is acting in the capacity of a contractor under this chapter." NRS § 624.-020(2).

In addition to the fact that plaintiff employed Taylor and various sub-contractors on the construction project, defendants' exhibit 3 attached to their motion for summary judgment reveals that plaintiff's chairman of the board signed an application for a Clark County, Nevada, building permit for one phase of the construction of plaintiff's hotel. In addition, § 9.03 of the MGM/Imperial contract provided that plaintiff was to secure the general building permit for the project. Thus, the answer to the Court's first question is clear. Under Nevada law plaintiff was acting as a contractor in the construction of its hotel.

The Court's second and third questions can be answered together. Respectively these questions ask if plaintiff was required to secure a Nevada contractor's license, or was exempt from the statutory provisions. Before examining the statutory provisions of NRS Chapter 624 it is necessary to discuss plaintiff's allegation that the Nevada State Contractors Board has made a determination that plaintiff is not required to possess a contractor's license. The board's initial involvement into this situation appears to have occurred in October of 1972, at which time the board notified plaintiff that it would be necessary for it to procure a contractor's license in order to continue with the construction of its hotel. See defendants' exhibit 3 attached to their reply points and authorities in support of the motion for summary judgment. It appears that plaintiff ignored this notice from the board and proceeded to continue with the construction of its hotel. On April 25, 1974, long after the hotel had been completed, the question of plaintiff's license again came before the board. The April 25, 1974, hearing was conducted by the board to determine if Taylor Construction Company should be disciplined for certain alleged violations of NRS Chapter 624. One of the alleged violations pertained to the aiding and abetting of unlicensed contractors, specifically plaintiff. Defendants in the instant case were not represented at this hearing. During the course of the hearing the managing contractor concept was discussed in an attempt to determine whether plaintiff or Taylor was acting as the general contractor on the project. While the question of whether or not plaintiff was required to have a contractor's license was never directly discussed at the hearing, one of the board members made the comment that he thought that Taylor was the general contractor on the project. See defendants' exhibit 2 attached to their reply points and authorities in support of the motion for summary judgment. When the board's ruling concerning Taylor's possible violations of NRS Chapter 624 was handed down no mention was made of plaintiff's status with respect to a contractor's license. See defendants' exhibit 6 attached to their reply points and authorities. Since it does not appear from the board's findings that Taylor was penalized for aiding and abetting an unlicensed contractor (i. e., plaintiff) it can be inferred that the board felt that plaintiff was not required to possess such a license. However, the record is far from clear on this point.

█ Even if it can be inferred that the Nevada State Contractors Board has made a finding that plaintiff was not required to possess a contractor's license in

order to construct its hotel, this Court is not bound by that determination for several reasons. First of all, while NRS § 624.110 gives the board the authority to make rules and regulations necessary to carry out the provisions of Chapter 624, there has been no showing that the board has complied with the provisions of that section or the mandate of NRS Chapter 233B, The Nevada Administrative Procedure Act, relating to the adoption of administrative regulations, by passing a regulation exempting those in plaintiff's position from the licensing requirements of NRS Chapter 624. In addition, even if the board had made such a regulation, it would appear that in doing so they would be acting in derogation of the statutory command of NRS Chapter 624. The language of NRS Chapter 624 is clear and unambiguous. The chapter contains no exception for one in plaintiff's position.

"Administrative construction will not be permitted to override the plain language of the law, and where a statute is not ambiguous and its construction is not doubtful, the rule that courts will give weight to an administrative construction in determining the true meaning of a statute is not applicable." See 2 Am Jur 2d, Administrative Law § 248 p. 77 and cases cited therein.

The record is unclear, at best, as to whether or not the Nevada State Contractors Board has attempted formal recognition of the managing contractor concept by providing that an owner who contracts with a licensed contractor (although not one in the position of a general contractor) is exempt from the licensing provisions of NRS Chapter 624. However, if the board has attempted such a recognition it would appear that they are acting in excess of their statutory authority. To provide such an exemption by recognizing the managing contractor concept calls for legislative rather than administrative action. Since the Nevada Legislature has not

chosen to take this step, the existing statutes must be examined to determine if plaintiff falls within their scope.

■ This Court has already determined that due to its activities in connection with the construction of its hotel, plaintiff was acting as a contractor. Since it was acting as a contractor, under the Nevada statutes plaintiff was required to possess a Nevada contractor's license (specifically a primary classification "E" license. See Rules and Regulations of the State of Nevada State Contractors Board, Article III p. 12 [revised July 1973], noted supra,) in order to construct its hotel unless exempted from this requirement by the provisions of NRS § 624.330. Since plaintiff was not an owner building on residential, agricultural or farming property, the only possible exemption provisions that could apply to it, the Court's answer to the second and third questions is clear. Since plaintiff was not exempt from the provisions of NRS Chapter 624, it was required to possess a valid Nevada contractor's license.

■ The fourth and final question that must be answered by the Court is the effect of plaintiff's failure to obtain the required contractor's license on its ability to sue the defendants for breach of contract. By acting as a contractor without possessing the required license, plaintiff has committed an unlawful act. See NRS § 624.230. Further, the unlawful nature of plaintiff's acts has tainted its contract with defendants to the extent that the contract must be considered illegal. In addition, NRS § 624.-320 provides that:

"No person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, engaged in the business of acting in the capacity of a contractor shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter

without alleging and proving that such person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid." NRS § 624.320.

There does not appear to be any Nevada case that directly considers the issue presented to this Court, however, there are a number of cases from Nevada and other jurisdictions that consider closely related issues and can provide this Court with guidance. Although the language of NRS § 624.320 does not specifically forbid one in plaintiff's position from suing for breach of contract, it is clear from an examination of defendants' authorities that such a result would not strain the intent of the statute. As the Nevada Supreme Court has noted:

"Norwood v. Judd may now be considered the leading case on the subject. Decided in 1949, it has been followed or cited with approval in numerous cases from 1954 to 1958. Among these we may note particularly Grant v. Weatherholt, 123 Cal.App.2d 34, 266 P.2d 185, Wilson v. Stearns, 123 Cal.App.2d 472, 267 P.2d 59, and Kennard v. Rosenberg, 127 Cal.App.2d 340, 273 P.2d 839, as being in point here. In Grant v. Weatherholt [123 Cal.App.2d 34, 266 P.2d 191] the court fully recognized the nullifying effect of the statute. 'Plaintiff's contract with the corporation was void. He could not recover on the contract, nor for breach of it, nor for the value of work done or for moneys expended thereunder.'" Magill v. Lewis, 74 Nev. 381, 333 P.2d 717, 719–720 (Nev. 1958).

This conclusion is also supported by an examination of additional Nevada cases that have considered the effect of this and similar punitive type statutes. See Milum v. Herz Brothers Water Well Drilling and Supply Company, 74 Nev.

301, 329 P.2d 1068 (1958); Nevada Equities, Inc. v. Willard Pease Drilling Co., 84 Nev. 300, 440 P.2d 122 (1968); Robken v. May, 84 Nev. 433, 442 P.2d 913 (1968); and Beggs v. Lowe, 516 P.2d 467 (Nev.1973).

Case law from other jurisdictions also supports the proposition that an unlicensed contractor (who is required to be licensed by the statutory provisions) is barred from suing for compensation for, or breach of, a contract arising out of his unlawful activities. For example, before California amended its statutory provisions to provide that an owner who contracted with a licensed contractor was exempt from the licensing provisions (see Cal.Bus. and Prof.Code § 7044) several California cases reached this result. See Proffitt & Durnell Plumbing, Inc. v. David H. Baer Co., 247 Cal.App.2d 518, 55 Cal.Rptr. 764 (1966); Currie v. Stolowitz, 169 Cal.App.2d 810, 338 P.2d 208 (1959); Lewis & Queen v. N.M. Ball Sons, 48 Cal.2d 141, 308 P.2d 713 (1957); Pickens v. American Mortgage Exchange, 269 Cal.App.2d 299, 74 Cal.Rptr. 788 (1969); and Moon v. Goldstein, 69 Cal.App.2d 800, 158 P.2d 1004 (1945). See also Miller v. Superior Court in and for County of Pima, 8 Ariz.App. 420, 446 P.2d 699 (1968); Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 (1951); Brummel v. Whelpley, 46 Mich.App. 93, 207 N.W.2d 399 (1973); Fleming v. Phelps-Dodge Corporation, 83 N.M. 715, 496 P.2d 1111 (1972); and Eklund v. Elwell, 116 Utah 521, 211 P.2d 849 (1949).

An examination of the aforementioned cases and statutes clearly dictates the result in the instant case. For this Court to hold that the provisions of NRS § 624.320 bar plaintiff's suit against defendants clearly does not result in a strained application of the statutory provisions, indeed, a strained application would result if the Court were to hold otherwise. Having found that the instant case presents no genuine issue of material fact for resolution and

that the defendants are entitled to prevail as a matter of law, the defendants' motion for summary judgment is hereby granted. This order constitutes this Court's findings of fact and conclusions of law. Accordingly, let summary judgment be entered dismissing plaintiff's complaint. The issues raised by the counterclaim and third-party complaint remain to be tried.