PELTIER, DIR., DEPT. OF COMMERCE, ET AL., APPELLANTS, *v.* SPAGHETTI TREE, INC. ET AL., APPELLEES.

[Cite as Peltier *v.* Spaghetti Tree, Inc. (1983), 6 Ohio St. 3d 194.]

(No. 82-864—Decided August 10, 1983.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Barry W. Moses,* for appellants.

*Mr. Terry Farmer,* for appellees.

*Messrs. Brownfield, Bowen & Bally, Mr. Lyman Brownfield, Blakemore, Rosen & Norris Co., L.P.A.,* and *Mr. Donald S. Varion, Jr.,* for appellees.

*Per Curiam.* The issue presented in this appeal is whether the selling of franchise agreements, the first agreement in the two-stage plan, is regulated by R.C. Chapter 1334 or Chapter 1707.

Appellants argue that the sale of the franchise agreement, used in the

first phase of the Spaghetti Tree, Inc. plan, is a security. They contend that it comes within the definition of a security in R.C. 1707.01 (B) which includes, "any investment contract."

Appellees maintain that the selling of the franchise agreement is covered by R.C. Chapter 1334. They contend that the two-phase selling plan is a typical arrangement used in franchising.[3]

R.C. Chapter 1334, the Business Opportunity Purchaser's Protection Act, went into effect in October 1979, about three months after the complaint in this cause was filed. R.C. 1334.01 (D) defines a "business opportunity" plan as "an agreement in which a purchaser obtains the right to offer, sell, or distribute goods or services under all of the following conditions:

"(1)   The goods or services are supplied by the seller, a third person with whom the purchaser is required or advised to do business by the seller, or an affiliated person;

"(2)   The purchaser is required to make an initial payment greater than one hundred dollars, but less than fifty thousand dollars, to the seller or an affiliated person to begin or maintain the business opportunity plan;

"(3)   The seller makes any of the following representations:

"(a)   That the purchaser will be provided with retail outlets or accounts, or assistance in establishing retail outlets or accounts, for the sale or distribution of the goods or services;

"(b)   That the purchaser will be provided locations, or assistance in finding locations, for vending machines, electronic games, rack displays, or any other equipment or display for use in the sale or distribution of the goods or services;

"(c)   That the purchaser can earn a profit in excess of the initial payment;

"(d)   That there is a market for the goods or services;

"(e)   That there is a buy-back arrangement."

Applying this provision to the case *sub judice,* the purchaser obtained the right to sell Spaghetti Tree, Inc. products once a franchise was in operation. The three statutory conditions are satisfied because the food and paper products were to be supplied by the seller, the seller represented, *inter alia,* that a profit in excess of the initial investment could be earned, and the purchaser made an initial investment within the range specified in the statute.

Other sections of the Act set forth requirements which must be met for the sale and lease of business opportunity plans, including written disclosures. The Act also prohibits specified practices and representations. The chapter provides for civil penalties, individual or class action suits

---

[3] The court of appeals noted, based upon Wendy's International prospectus, a great similarity in a two-stage plan consisting of an initial contract for the purchase of a franchise and a second operational contract which gives the franchisor control of the operation, location and decor.

against violators and criminal sanctions, both misdemeanor and felony.[4] When a seller violates any provision, the purchaser has the right to rescind the transaction and may, if damaged, recover the greater of three times the amount of actual damages or $10,000.[5]

Thus, this chapter is designed to regulate the sale of business opportunity plans and provides significant remedies "to those who have been misled by dishonest or negligent franchisors."[6] We agree with the lower courts, that the sale of the Spaghetti Tree, Inc. franchise agreements would come within the ambit of R.C. Chapter 1334.[7] Furthermore, appellants' assertion that the Ohio Securities Act applies, suggests that there is no need for R.C. Chapter 1334. However, the General Assembly was mindful of both types of activities, and specifically provided in R.C. 1334.12 (E) that the chapter does not apply to the transfer of a registered security defined by R.C. 1707.01 (B). Thus, the General Assembly enacted R.C. Chapter 1334 to regulate the sale of business opportunity plans, as a distinctly different activity from the sale of securities.

We conclude that the regulation of the sale of the Spaghetti Tree, Inc. franchise agreements comes within R.C. Chapter 1334 and not R.C. Chapter 1707.

Although the thrust of the complaint concerned the sale of the franchise agreements, it also alleged that the sale of Spaghetti Tree, Inc. unregistered promissory notes was a violation of R.C. 1707.44 (C)(1). The trial court concluded that this apparently was done through ignorance that a note could be a security requiring registration. Although, the court determined the sale of unregistered promissory notes was a technical violation of the Ohio Securities Act, it determined that there was no prejudice to purchasers because the promissory notes were few in number and of minimal value and had all been repaid.

Appellants contend that because this activity constituted a violation of R.C. Chapter 1707, the court had a mandatory duty to issue an injunction pursuant to R.C. 1707.26. The court of appeals found that the trial court was justified in considering equitable principles in refusing to grant the injunction sought.[8] R.C. 1707.26 provided in pertinent part:

---

[4] R.C. 1334.09 (A); R.C. 1334.99.

[5] R.C. 1334.08 empowers the Attorney General to bring a variety of actions for violations of the Business Opportunity Purchaser's Protection Act. In comparison, R.C. 1707.26 gives the Director of Commerce the responsibility for bringing actions for violations of the Ohio Securities Act.

[6] 41 Ohio St. L. J. 477, 498 (1980).

[7] The case law involving R.C. Chapter 1334 is sparse. *State, ex rel. Celebrezze,* v. *Roadmasters of Ohio, Inc.* (Mar. 1, 1983), Franklin C.P. No. 83CV-01-641, unreported, which has not been appealed, was based upon violations of R.C. 1334.01 *et seq.*

[8] The trial court similarly found that the minimal amount of assistance by Spaghetti Tree, Inc. employees, in finding buyers for shareholders who desired to sell their shares, did not amount to a sale as proscribed by R.C. 1707.44 (C). The court noted that the evidence indicated

"Whenever it appears to the division of securities, upon complaint or otherwise, that any person had engaged in, is engaging in, or is about to engage in, any deceptive or fraudulent act, practice, or transaction, or in any act, practice, or transaction declared to be illegal, prohibited, or defined as fraudulent in sections 1707.01 to 1707.45, inclusive, of the Revised Code, the director of commerce may apply to a court of common pleas of any county in this state for, and upon proof of any of such offenses such court *may* grant an injunction restraining such person and its agents, employees, partners, officers, directors, and shareholders from continuing, engaging in, or doing any acts in furtherance of, such acts, practices, or transactions, and may order such other relief as the facts warrant." (Emphasis added.)

It is significant that this section has been revised, effective November 19, 1982, and the language changed, *inter alia,* to "such court *shall* grant an injunction." Thus, it is clear that the statute now imposes a mandatory duty to grant an injunction. We agree with the court of appeals that the "may grant" language allowed the trial court discretion to deny the injunction.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., COOK, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

---

approximately twenty-nine transfers by about ten shareholders. The court of appeals concluded that such acts had not occurred since 1977 and that the trial court properly refused to grant an injunction.