**TELE–SAVE MERCHANDISING COMPANY, Plaintiff-Appellant,**

v.

**CONSUMERS DISTRIBUTING COMPANY, LTD., Defendant-Appellee.**

**No. 86–3115.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1986.

Decided April 1, 1987.

see Note, *What Constitutes A Judicial Act for Purposes of Judicial Immunity?,* 53 Fordham L.Rev. 1503 (1985).

Gary D. Greenwald (argued), Schottenstein, Zox, Dunn, Columbus, Ohio, for plaintiff-appellant.

Karen A. Winters, Asst. Atty. Gen., Consumer Protection Div., Columbus, Ohio, for Amicus Curiae—State of Ohio in support of appellant.

James L. Graham, Columbus, Ohio, Barry L. Eisenberg (argued), Lasser, Hochman, Marcus, Guryan, & Kuskin, Roseland, N.J., for defendant-appellee.

Before MARTIN, MILBURN and BOGGS, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.

Plaintiff Tele-Save Merchandising Company appeals the grant of defendant's motion for summary judgment in this diversity action brought under the provisions of 28 U.S.C. § 1332(a). Tele-Save's original complaint contained four allegations against Consumers Distributing Company, Ltd.; count one, alleging violations of the Ohio Business Opportunity Plans Act, is the sole subject of this appeal. For the reasons set forth below we affirm the decision of the district court.

Tele-Save was an Ohio corporation with its principal place of business in Columbus, Ohio. Consumers is a Canadian corporation with an office in New Jersey. In early 1981, the parties began negotiation of an agreement whereby Consumers, a large chain of catalog showroom operators, would supply products and services to Tele-Save. Tele-Save would in turn operate as a catalog retail showroom under the direction of Consumers. An agreement was reached in late July 1981. Paragraph 17 of the agreement reads:

> This Agreement shall be governed by, and construed in accordance with, the laws of the State of New Jersey.

Tele-Save opened its store in late September 1981 offering for sale general merchandise received from Consumers and from other suppliers who advertised in the Consumers catalog. In January 1982, Consumers notified Tele-Save that it was cancelling its catalog program. Tele-Save asked Consumers to reimburse the cost of merchandise purchased through the agreement and to accept its return. Consumers's refusal prompted this lawsuit.

Count one of Tele-Save's complaint, and the only issue presented on this appeal, charged Consumers with violating Ohio's Business Opportunity Plans Act, Ohio Revised Code Chapter 1334. The Act, which took effect in October 1979, regulates the sale of business opportunity plans and provides certain rights and remedies for Ohio purchasers who are defrauded by dishonest or negligent sellers. Specifically, Tele-Save alleged Consumers violated section

1334.02 by failing to provide a written disclosure statement in connection with the transaction, section 1334.03 by failing to make certain disclosures regarding potential sales, income, and profits, by making false and misleading statements, and by accepting a down payment in excess of twenty percent of the initial payment, and section 1334.06 for failing to give the required notice of cancellation and failing to follow specific procedures with regard to cancellation.

Consumers filed a motion for summary judgment arguing that the Ohio Act was inapplicable to its agreement with Tele-Save because paragraph 17 of the agreement stipulated that the contract would be governed by New Jersey law. Tele-Save opposed the motion, arguing that the contractual choice-of-law provision was ineffective because application of New Jersey law violated a fundamental public policy of Ohio and because Ohio had a materially greater interest in the resolution of the dispute than New Jersey. The district court granted the defendant's motion and never reached the merits of the claim of violations of the Act.

■ Federal courts sitting in diversity must apply the choice-of-law principles of the forum. *Klaxon Co. v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, Ohio choice-of-law principles are applicable in this case.

The Ohio Supreme Court in considering the deference to give contractual choice-of-law provisions has adopted the guidelines of the *Restatement (Second) of Conflict of Laws*, § 187(2) (1971):

The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Company*, 6 Ohio St.3d 436, 438–39, 453 N.E.2d 683 (1983).

Ohio's receptivity to contractual choice-of-law was further discussed in the recent decision of *Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 478 N.E.2d 786 (1985). In *Jarvis*, the Ohio Supreme Court held that "where the parties to a contract have made an effective choice of the forum law to be applied, the Restatement of the Law 2d, Conflict of Laws (1971) 561, Section 187(2), will not be applied to contravene the choice of the parties as to the applicable law." *Id.* 17 Ohio St.3d at 192, 478 N.E.2d 786. The court then added a narrow limitation to this rule: "[W]here the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of [Ohio], the law of Ohio will only be applied when it can be shown that [Ohio] has a materially greater interest than the chosen state in the determination of the particular issue." *Id.*

These recent comments by the Ohio Supreme Court indicate that Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties. We see no reason to disturb the parties' choice absent the application of another state's law that would be concededly repugnant to Ohio public policy.

Tele-Save contends that the contractual choice-of-law provision should be ignored in this case and that Ohio law should be applied because of a non-waiver provision found in the Ohio Business Opportunity Plans Act. Section 1334.15 of the Act states:

The remedies of sections 1334.01 to 1334.15 of the Revised Code are in addition to remedies otherwise available for the same conduct under federal, state, or

local law. Any waiver by a purchaser of sections 1334.01 to 1334.15 of the Revised Code is contrary to public policy and is void and unenforceable.

Tele-Save argues that because the Ohio legislature chose to adopt the Act, including section 1334.15, we must infer that the application of another state's law would be contrary to a fundamental public policy of Ohio and that Ohio has a materially greater interest in the resolution of the conflict. We are unwilling to make these assumptions.

In order to find the first prong satisfied, we would have to find both that the Ohio statute represents *fundamental* state policy and that the parties' chosen law would be contrary to this fundamental policy. There is no hard and fast rule to determine when a state policy will be considered "fundamental." The Restatement suggests a few guidelines. For example, courts may consider a policy "fundamental" when a large number of significant contacts are grouped in the forum state as opposed to the chosen state. *Restatement (Second) of Conflict of Laws*, § 187 comment g (1971). In the present case, we might observe that there is no heavy concentration of significant contacts in Ohio, rather the contacts are fairly evenly divided between New Jersey and Ohio.

The Restatement also suggests that a statute may embody a "fundamental" state policy if it is "designed to protect a person against the oppressive use of superior bargaining power [as, for example, in a statute] involving the rights of an individual insured as against an insurance company...." *Id.* We think it important to our decision that the parties to this contract were not of unequal bargaining strength. Their contract was freely negotiated by aggressive and successful business executives, untainted by the suspicion and misgivings characteristic of adhesion contracts. Thus, we are unable to conclude that the Ohio Business Opportunity Plans Act represents a fundamental policy of Ohio.

Further, even if we were to concede that the Ohio statute represents fundamental public policy, we are unpersuaded that the application of New Jersey law would be contrary to this policy. Both parties agree that New Jersey does not have a statute which is identical to the Ohio Act. One may not determine conclusively from this omission, however, that the application of New Jersey law would be contrary to Ohio policy. Tele-Save acknowledges that there are also common law remedies available under New Jersey law. In its original complaint, Tele-Save alleged claims for breach of contract and fraud. It is not sufficient for Tele-Save to argue nor would we hold that Ohio law should be applied merely because a different result would be reached under New Jersey law. *Restatement (Second) of Conflict of Laws*, § 187 comment g (1971). In order for the chosen state's law to violate the fundamental policy of Ohio, it must be shown that there are significant differences in the application of the law of the two states. *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1031 n. 19 (4th Cir.1983) (Ohio law regarding restrictive covenants not applied to a state that prohibits such covenants). We find nothing under the facts before us to indicate that application of New Jersey law would be repugnant to or clearly contrary to the public policy of Ohio. Because we find the first prong of the Restatement, section 187(2)(b) analysis to be unsatisfied, we need not address the question of whether Ohio has a materially greater interest than New Jersey in the outcome of this dispute.

As an alternative argument, Tele-Save asks that we find section 1334.15 of the Act to be a statutory directive regarding Ohio choice-of-law. Tele-Save bases its argument on section 6(1) of the *Restatement (Second) of Conflict of Laws* which reads: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Tele-Save contends that if we accept the section 6(1) Restatement argument, we need not engage in the section 187(2)(b) analysis.

In support of its theory, Tele-Save cites *Turner v. Aldens, Inc.*, 179 N.J. Super. 596, 433 A.2d 439 (1981), in which a New

Jersey court chose to apply the provisions of the New Jersey Retail Installment Sales Act rather than the parties' contractual choice of Illinois law. We think it significant that *Turner* involved adhesion contracts. The New Jersey court, in holding that failure to apply the statute would violate a fundamental policy of New Jersey, voiced concern that individual consumers had not freely chosen Illinois law to govern their contracts. To the contrary in the present case we have a freely negotiated contract between parties of relatively equal bargaining strength. We are unpersuaded that section 1334.15 of the Ohio Act should constitute a statutory directive on Ohio choice-of-law as to these parties.

For these reasons we find the Ohio Business Opportunity Plans Act inapplicable to this case. The decision of the district court is affirmed.

MILBURN, Circuit Judge, dissenting.

Because I believe that the Ohio Business Opportunity Purchasers Protection Act ("the Act"), Ohio Rev. Code § 1334.01 *et seq.*, is applicable in the present case, I must respectfully dissent.

The issue presented is whether an out-of-state seller of business opportunity plans may avoid application of the Act by means of a contractual choice-of-law provision. The purpose of the Act is "to regulate the sale of business opportunity plans and [to provide] significant remedies 'to those who have been misled by dishonest or negligent franchisors.'" *Peltier v. Spaghetti Tree, Inc.*, 6 Ohio St.3d 194, 451 N.E.2d 1219, 1221 (1983) (quoting Comment, *The Business Opportunity Purchasers Protection Act: The Unfulfilled Promise to Ohio Franchisees*, 41 Ohio St. L.J. 477, 498 (1980)). The Act requires sellers of business opportunity plans to provide purchasers written disclosure statements, Ohio Rev.Code §§ 1334.02, 1334.06, and prohibits certain practices and representations, Ohio Rev.Code §§ 1334.03, 1334.06. Those who violate the Act may be liable for civil penalties, Ohio Rev.Code § 1334.08, and may be subject to criminal sanctions, Ohio Rev. Code § 1334.99. When a seller violates any provision, the purchaser may rescind the transaction and recover the greater of three times the amount of actual damages or $10,000.00, plus a reasonable attorney's fee. Ohio Rev.Code § 1334.09.

A federal court sitting in a diversity case must apply the conflict of laws rules prevailing in the state in which the court sits. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Colonial Refrigerated Transportation, Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir.1983). This court is not permitted to fashion its own rules and must, whenever possible, reach the identical result the state court would reach in deciding the same issue. *See Goodwin v. George Fischer Foundry Systems, Inc.*, 769 F.2d 708, 711 (11th Cir. 1985). Therefore, this court is required, as was the district court, to function as an Ohio court in deciding whether to enforce the contractual choice-of-law provision.

Under Ohio law, a contractual choice-of-law provision will not be given effect where "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties." *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438–39, 453 N.E.2d 683, 686 (1983) (quoting and expressly adopting *Restatement (Second) of Conflict of Laws* § 187(2)(b) (1971)); *see also Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 191, 478 N.E.2d 786, 788–89 (1985). Although Ohio courts accord considerable deference to contractual choice-of-law provisions, the extent to which Ohio courts will allow "deft draftmanship" to override Ohio public policy and bypass legislative judgments is limited. *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1029 (4th Cir.1983) (per curiam). Fulfillment of the parties' expectations is an important consideration in contract law, but "regard must also be had for state interests and

state regulation." *Restatement (Second) of Conflicts of Laws* § 187 comment g (1971).

Ohio has a clearly expressed fundamental policy of protecting small, inexperienced purchasers of business opportunity plans from the unfair and misleading practices often utilized by economically superior sellers of business opportunity plans. *See Business Incentives Co. v. Sony Corp.,* 397 F.Supp. 63 (S.D.N.Y.1975) (contractual choice of New York law unenforceable because it contravened New Jersey's statutory policy of protecting small investors from unfair franchise practices); *Restatement (Second) of Conflicts of Laws* § 187 comment g (1971) ("a fundamental policy may be embodied in a statute ... which is designed to protect a person against the oppressive use of superior bargaining power."). The Act implicitly recognizes that oftentimes individuals with little economic wealth or business experience are lured into purchasing business opportunity plans "by exaggerated profit claims made by sellers who fail to provide full and complete information regarding crucial aspects of the plan." Meaney, *Ohio's Business Opportunity Law: A Practical Guide,* 11 Ohio N.U.L.Rev. 651, 652 (1984). The fact that the Ohio legislature considered these protections fundamental is evidenced by the fact that Ohio provided criminal sanctions for violations of the Act. *See MGM Grand Hotel, Inc. v. Imperial Glass Co.,* 65 F.R.D. 624, 632 (D.Nev.1974), *rev'd on other grounds,* 533 F.2d 486 (9th Cir.),

*cert. denied,* 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976).[1]

Moreover, Ohio has a clearly expressed fundamental policy of prohibiting enforcement of contractual choice-of-law provisions abrogating the protections afforded by the Act. *See Industrial Indemnity Insurance Co. v. United States,* 757 F.2d 982 (9th Cir.1985) (Idaho expressed a fundamental policy of strict adherence to the statute of limitations period by statutorily prohibiting any condition in a contract that would reduce the period); *Forney Industries, Inc. v. Andre,* 246 F.Supp. 333 (D.N. D.1965) (North Dakota expressed a fundamental policy against covenants not to compete by virtue of a statute which rendered contracts in restraint of trade void). Ohio Rev.Code § 1334.15 provides that "[a]ny waiver by a purchaser of sections 1334.01 to 1334.15 of the Revised Code is contrary to public policy and is void and unenforceable." Moreover, Ohio Rev.Code § 1334.-06(E)(2) provides that "no seller shall ... [i]nclude in any agreement ... any waiver of any rights to which the purchaser is entitled under sections 1334.01 to 1334.15 of the Revised Code...." [2]

Ohio also has a "materially greater interest" than New Jersey in resolution of this controversy. *See Barnes,* 716 F.2d at 1030 (Alabama's interest in regulating business relationships within the state is materially greater than Ohio's generalized interest in protecting the interstate contracts of its domiciliary); *Stickney v. Smith,* 693 F.2d 563, 565 (5th Cir.1982) (Louisiana's interest in protecting persons injured within the

1. The majority suggests that whether a state's policy is fundamental depends on the number of contacts the state has with the transaction. To the contrary, *Restatement (Second) of Conflicts of Laws* § 187 comment g (1971), provides only "that the more contacts the transaction has with the chosen state, the stronger the public policy must be to overcome the stipulation." E. Scoles & P. Hay, *Conflict of Laws* § 18.9, at 648 (1984).

2. The majority suggests that Ohio's policy of protecting small investors and prohibiting contractual waivers of rights provided in the Act is not implicated in the present case because Tele-Save and Consumers "were not of unequal bargaining strength." To the contrary, Consumers was one of the largest chains of catalog show-

room operations in the United States and Canada, while Tele-Save, having been capitalized with only a $150,000 investment, was seriously undercapitalized. Joint Appendix at 53–57, 87. This gross disproportionality in economic strength is not indicative of equal bargaining power.

The majority also suggests that Ohio's public policy would not be undermined by requiring Tele-Save to pursue New Jersey's common law fraud remedy. To the contrary, in the absence of a fiduciary relationship, nondisclosure does not constitute fraud under New Jersey law. *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 189 N.J.Super. 347, 460 A.2d 161 (1983), *aff'd in part and rev'd in part,* 97 N.J. 37, 477 A.2d 1224 (N.J.1984).

state is materially greater than Michigan's interest in construing the insurance contracts issued by its domiciliary); *Business Incentives*, 397 F.Supp. at 67 (New Jersey's interest in protecting small businessmen and powerless consumers is materially greater than New York's interest in protecting interstate contract of its domiciliary). Ohio's interests in applying its own law are to maintain its ability to regulate the sale of business opportunity plans within the state and to protect its citizens from dishonest or negligent franchisors. In my view, Ohio courts would hold that these interests materially outweigh any generalized interest New Jersey might have in applying its own law to protect the interstate contracts of its domiciliary.

Ohio would be the state of applicable law in the absence of an effective choice of law by the parties. *Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*, 208 N.J.Super. 666, 506 A.2d 817 (1986) (New Jersey legislature intended Franchise Practices Act to govern the relationship between an out-of-state franchisor and a New Jersey franchisee and this intent constitutes a statutory directive regarding choice of law). Ohio has adopted *Restatement (Second) of Conflicts of Laws* § 188 (1971) to deal with the situation where the parties have not made an effective choice of law. *Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807, 810 (1984), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). Section 188(1) requires application of the law of the state which "has the most significant relationship to the transaction and the parties under the principles stated in § 6." Section 6(1) of the *Restatement* provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."

Application of section 6(1) is not limited to those situations where the legislature has expressly directed a court "to apply the local law of one state, rather than the local law of another state, in the decision of a particular issue." *Restatement (Second) of Conflicts of Laws* § 6 comment b (1971). Section 6(1) requires a court to "give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid." *Id.* The Ohio legislature intended to offer Ohio residents the protection of the Act no matter where the seller deals, and this intent constitutes a statutory directive respecting choice of law.[3]

Even if the choice-of-law provision is not "contrary to a fundamental policy of a state which has a materially greater interest than the chosen state," section 6(1) requires application of Ohio law. "Provided that it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles." *Restatement (Second) of Conflicts of Laws* § 6 comment b (1971). The Ohio legislature expressly intended the Act to apply to these facts, and this court, while functioning as an Ohio court for purposes of diversity, may not disregard the directions of the Ohio legislature. *Restatement (Second) of Conflicts of Laws* § 6 comment a (1971).

Accordingly, I would REVERSE the district court's entry of summary judgment and REMAND for further proceedings.

---

**3.** The majority suggests that the Ohio legislature did not intend the Act to apply to a contract between an Ohio purchaser and an out-of-state seller unless the contract is one of adhesion. To the contrary, the Act is expressly applicable to "any claim arising from the sale or lease of a business opportunity plan" in Ohio, Ohio Rev. Code § 1334.10(A), and there is no evidence that the Act was intended to apply only to adhesion contracts.