David MACKEY, et al.,
Plaintiffs–Appellants,

v.

JUDY'S FOODS, INC., et al.,
Defendants–Appellees.

No. 87–5391.

United States Court of Appeals,
Sixth Circuit.

Argued July 29, 1988.
Decided Feb. 10, 1989.

Thomas P. Malone (argued), Minneapolis, Minn., Raymond G. Prince, Nashville, Tenn., Alan Mark Turk, for plaintiffs-appellants.

Tyree B. Harris, Nashville, Tenn., Mark H. Lynch (argued), Covington & Burling, Washington, D.C., for defendants-appellees.

Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Mackey and other franchisees sued franchisors, Judy's Foods and its parent companies, claiming fraud, breach of contract, violation of the Tennessee Consumer Protection Act and intentional infliction of emotional distress. The district court granted summary judgment for the franchisors based on its determination that the statutes of limitations and a validly executed release signed by the franchisees and Judy's Foods barred all of the claims brought by the franchisees. 654 F.Supp. 1465 (M.D.Tenn.1987).

We agree with the district court that all of the franchisees' claims are barred by either the applicable statute of limitations or the release. Therefore, we affirm the decision granting summary judgment to the franchisors.

## I

Judy's Foods, originally formed by General Care Corporation and later sold to the Hospital Corporation of America, was a franchise operation selling fast food. When it first began selling franchises, Judy's Foods was illegally appropriating the format of Wendy's International. In 1979, the franchisees in this action signed a Prospective Licensing Agreement, creating the option for them to own and operate two restaurants in Alabama. The contract specified that Tennessee law would apply to its interpretation. At this time, Judy's Foods knew that it would have to change its format to avoid litigation by Wendy's, but did not tell the franchisees about this or any other problems relating to the operation of the franchises.

The franchisees built their restaurants according to the original format, unaware that they would have to change that format shortly thereafter. When the franchisees finally learned of the suit which was ulti-

mately filed by Wendy's, the franchisors told them that the suit was without merit. The franchisors gave the franchisees $12,-000 to change the format of the two restaurants, but denied that the change was related to problems with Wendy's.

Dyer, one of the franchisees, began contacting the franchisors with complaints in June 1979, alleging that Judy's Foods was not living up to its agreement. The franchisees claim to have relied on promises in the licensing agreement that the franchisors would open over 500 restaurants nationwide, and would advertise nationally. However, in January 1980, the franchisors suspended the offer and sale of franchises.

In 1980, there were two meetings of franchisees. Dyer attended both of those meetings. He claims that there was no mention of litigation at either meeting, but his notes from the first meeting include the phrase "legal action," and a legal committee was established at this meeting. Dyer was not on the legal committee, but did chair a committee which included a plaintiff in another suit against the franchisors. In addition, attorneys who would later represent other franchisees in their suits against the franchisors were also present at this first meeting.

The second meeting was held in November 1980, after other franchisees had filed suits against the franchisors in May, August and September of 1980. The plaintiffs in those suits, and their attorneys, were present at this meeting. Again, Dyer claims that there was no mention of litigation at this meeting.

On May 20, 1981, Mr. Grammer, a franchisee and plaintiff in one of the other suits against the franchisors, sent a letter and questionnaire to all franchisees asking for help with his suit and suggesting that other franchisees initiate their own suits. However, the franchisees claim that this letter was followed by a letter from the franchisors alleging that Grammer's suit was "unfounded." The franchisees contend that they believed the franchisors rather than Grammer, and they thus thought Grammer's suit was baseless.

On November 9, 1981, the franchisees and Judy's Foods, but not Judy's Foods' parent corporations, General Care Corporation and Hospital Corporation of America, signed a termination and cross-release agreement. An employee of the franchisors explained that the document was like a divorce, and also informed the franchisees that there were other suits pending against Judy's Foods at the time. Judy's Foods paid the franchisees $20,000 in consideration for signing the release and the franchisees paid Judy's Foods $2,900 in royalties and equipment costs which were in arrears.

Almost a year later, the jury in one of the other suits against the franchisors awarded a large sum to the franchisees. Other large awards followed in the other suits. Dyer's brother sent him a newspaper clipping reporting one of the verdicts. This is when Dyer claims he first knew of the existence of the franchisees' cause of action against the franchisors.

Both a magistrate and the district court found that the franchisees had actual notice of the existence of their claims by the first meeting of the franchisees in November 1980. Thus, their claims accrued at that time. The court held that various statutes of limitations barred all claims except the contract claim. The district court, unlike the magistrate, applied Alabama's substantive contract law to the interpretation of the release. Because Alabama law requires the tendering back of consideration (which the franchisees failed to do) before one can challenge the validity of a release, the court ruled that the release barred the remaining contract claim.

## II

Summary judgment is appropriate when the moving party can show that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In deciding what substantive law applies, one must first look to the forum state's choice of law statute. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). However, we must apply the procedural law, including statutes of limitations, of the forum state, Tennessee. *Whitfield v. City of Knoxville*, 756 F.2d 455, 461 (6th Cir.1985). Clearly, Tennessee law governs the claim under the Tennessee Consumer Protection Act. Tenn.Code Ann. § 47–18–101 *et seq.* (1980). We must then determine, by reference to the Tennessee choice of laws statutes, what law applies to the tort claims, the contract claim, and the release.

Tennessee choice of law rules indicate that the law of the state in which the tort claim arises controls. *Winters v. Maxey*, 481 S.W.2d 755 (Tenn.1972); *Parsons v. American Trust & Banking Co.*, 168 Tenn. 49, 73 S.W.2d 698 (1934). Thus, Alabama law provides the substantive law for resolution of the plaintiffs' tort claims.

As regards the contract claims, under Tennessee law, the validity of a contract and the substantive rights of the parties to the contract are governed by the law of the state contemplated by the parties; in the absence of evidence to the contrary, the parties are presumed to have intended to contract pursuant to the laws of the state in which the contract was entered into. *Boatland, Inc. v. Brunswick Corp.*, 558 F.2d 818, 821 (6th Cir.1977). Here, the parties entered into the contract in Tennessee, and the licensing agreement provided that Tennessee law would govern any disputes arising from the contract. Thus, the contract claim must be analyzed under Tennessee law.

A release is treated differently from other contracts for choice of laws purposes when considering the effect of the release on *tort* claims involving *nonparties* to the release. *State ex rel. Neff v. Cotton Belt Insurance Co., Inc.*, No. 87–101–11, slip op. (Tenn.Ct.App., December 2, 1987) [1987 WL 28386]; Restatement, *Conflict of Laws* § 389; Wharton, *Conflicts of Laws* (3rd ed.) § 475(b); 76 C.J.S. *Release* § 39; *Western Newspaper Union v. Woodward*, 133 F.Supp. 17 (W.D.Mo.1955). However, when the effect of the release on the contract claims between the parties to the release is considered, it is to be treated as a standard contract. *Restatement (2d) of Conflicts of Laws*, § 170, Comment b. Thus, just as Tennessee law applies to the licensing agreement, so too does Tennessee law apply to the effect of the release on the contract claim. *Neff,* slip. op. No. 87–101–11 (Tenn.Ct.App., December 2, 1987).

Thus, the tort claims are governed by Alabama substantive law; the contract claim is governed by Tennessee substantive law; and the release, as it affects the parties to the release, is governed by Tennessee substantive law, also. Tennessee statutes of limitations apply to all claims in that those statutes are procedural.

### III

Before turning to an analysis of how the various statutes of limitations affect the plaintiffs' claims, we must first determine when those claims accrued. A claim accrues when the plaintiffs discover their injury or "through the exercise of reasonable care and diligence [it] should have been discovered." *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn.1975). Both the magistrate and the trial judge found as fact that the plaintiffs knew or should have known, through the exercise of reasonable diligence, of their injury and its source by November 4, 1980, three years and two months before they filed suit. We agree. Plaintiff Dyer complained to Judy's Foods on June 19, 1979 in a letter. The plaintiffs in the other suits had enough information to file their suits in May, August, and September 1980. All of those plaintiffs were present at the February 1980 meeting, and one of them was on the committee that Dyer chaired. Plaintiff Dyer's own notes from that meeting contain the phrase "legal action." In addition, the plaintiffs were aware that General Care Corp. had sold Judy's Foods to the Hospital Corpora-

tion of America by November 9, 1979. Any one of these facts taken alone might not have alerted the plaintiffs to the defendants' questionable conduct; however, taken together, with the use of reasonable diligence they should have alerted the plaintiffs to the existence of their causes of action. Further, even when, as here, plaintiffs argue that a statute of limitations should be tolled for equitable reasons by the fraudulent concealment of the causes of action, the statute is tolled "only during the period when the plaintiff has no knowledge that a wrong has occurred, and, as a reasonable person is not put on inquiry." *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 865 (Tenn.1983) (citation omitted). Because we agree with the district judge that no reasonable juror could find that the plaintiffs were not put on notice by November 1980 of their claims against the defendants, we must agree with the trial judge that the claims accrued no later than that date.

### A

In that the Tennessee Consumer Protection Act claim is governed by the Act's one-year statute of limitations, Tenn.Code Ann. § 47–18–110, the plaintiffs' claims under that statute obviously are time-barred. We must determine the effects of the applicable statutes of limitations on the other claims raised by the plaintiffs.

### B

■ In Tennessee, the appropriate statute of limitations is determined by the type of injuries claimed and the damages sought. The gravamen of most of the tort claims sounds in fraud. The appropriate statute of limitations in fraud actions is three years. Tenn.Code Ann. § 28–3–105. The claim for intentional infliction of emotional distress is most closely analogous to an action for injury to the person, and thus the one-year statue of limitations applies. Tenn.Code Ann. § 28–3–204. Because we

agree with the district court that the claims accrued no later than November 1980, and because this suit was filed three years and two months after that time, we agree with the district judge that all of the tort claims are barred by the applicable statute of limitations.

### IV

■ The only remaining claim is the claim for breach of contract. That claim is only against Judy's, Inc., and not the other defendants. Tennessee's statute of limitations for contract claims is six years. Tenn.Code Ann. § 28–3–109. Thus, this claim is not time-barred. However, because this claim involves only the parties who signed the release, and because we agree with the district judge that the release remains in full effect, we affirm the holding of the district court that the release barred the claim for breach of contract.[1]

Both Tennessee and Alabama law require the tender back of the consideration for the release within a reasonable time after discovering the alleged fraud if a party wishes to rescind and repudiate the release. *Boles v. Blackstock*, 484 So.2d 1077 (Ala.1986) (citing *Jehle–Slauson Construction Co. v. Hood–Rich Architects and Consulting Engineers*, 435 So.2d 716, 719 (Ala.1983)) and *Edmondson v. Dressman*, 469 So.2d 571 (Ala.1985); *Cordell v. Sky Rides of America, Inc.*, 404 S.W.2d 488, 489 (Tenn.1966). The district judge found that the franchisees had not even attempted to return the consideration they received for signing the release. The franchisees do not contest this finding. Thus, the franchisees cannot challenge the validity of the release; the release remains in full effect.

The terms of the release are very clear. It released Judy's Foods from "all claims for damages arising out of any agreement with Judy's." Dyer testified in his deposition that he understood that he would not

---

1. The franchisees claim that the franchisors did not raise this claim before this appeal, and, thus, they are barred from raising it here. They are mistaken. In the franchisors' answer to the original complaint in this action, the franchisees' Twelfth Defense states: "Any and all claims made by plaintiffs have been discharged by appropriate releases."

be able to sue Judy's once he signed the release. It is clear that the franchisees knew what the release said as well as the consequences of signing it. Since it remains in full effect, it bars the franchisees' contract claims. Thus, although we hold that Tennessee law applies to this claim, under either Alabama or Tennessee law, the result would be the same: the release bars the breach of contract claim.

## V

Thus, we find that the trial judge was correct in holding that the relevant statutes of limitations bar all claims except the breach of contract claim. Further, we agree that the release bars the breach of contract claim. Thus, all of the claims alleged by the franchisees are barred by either the applicable statute of limitations or the release. The judgment of the district court is AFFIRMED.