**Henry Kevin BLANE, Plaintiff,**

v.

**AMERICAN INVENTORS CORP.,
et al., Defendants.**

No. 3–94–0142.

United States District Court,
M.D. Tennessee.

April 2, 1996.

---

Ira Clinton Waddey, Jr., Waddey & Patterson, Nashville, TN, for plaintiff.

Alan Dale Johnson, Alfred H. Knight, Willis & Knight, Nashville, TN, for defendants.

## ORDER

ECHOLS, District Judge.

Pending before the Court are the parties' cross-motions for summary judgment.* In his Motion, Plaintiff moves for summary judgment against all Defendants on only the issue of liability as a result of Defendants' violation of the Tennessee Invention Development Act (the "Act"), Tenn.Code Ann. §§ 47–25–1201 to –1222 (1995). Defendants do not dispute that their actions or omissions are in violation of Tennessee law; rather, they argue that Tennessee law is inapplicable to this case.

In their Motion, Defendants argue that this case should be dismissed for improper venue as to Defendants Ron Boulerice, Diane Tagliavini, and Cary Bissell. Alternatively, Defendants urge the Court to transfer this case to Massachusetts, where venue is proper, pursuant to 28 U.S.C. § 1404(a). This portion of Defendants' Motion is in reality a motion to dismiss for improper venue, or, in the alternative, to transfer venue, and the Court has treated it as such. Defendants also argue that the Act is inapplicable to them because Tennessee law should not be applied to this case. Finally, Defendants argue that the damages provision of the Act constitutes an unconstitutional taking without due process of law.

For the reasons stated in the accompanying Memorandum, Plaintiff's Motion for Summary Judgment is hereby GRANTED, and Defendant's Motion for Summary Judgment, which the Court has also treated as a motion to dismiss for improper venue, or, in the alternative, to transfer venue, is hereby DENIED. Accordingly, Plaintiff is to be awarded damages on Count I of his Complaint in an amount equal to three times the amount of the actual damages proven.

The parties are directed to notify Judge Echols' Courtroom Deputy, Ms. Marcia Knoch (736–2778), within ten (10) days of the date of entry of this Order, so that further case management proceedings can be scheduled.

IT IS SO ORDERED.

## MEMORANDUM

Pending before the Court are the parties' cross-motions for summary judgment.[1] In his Motion, Plaintiff moves for summary judgment against all Defendants on only the issue of liability as a result of Defendants' violation of the Tennessee Invention Development Act (the "Act"), Tenn.Code Ann. §§ 47–25–1201 to –1222 (1995). Defendants do not dispute that their actions or omissions are in violation of Tennessee law; rather, they argue that Tennessee law is inapplicable to this case.

In their Motion, Defendants argue that this case should be dismissed for improper venue as to Defendants Ron Boulerice, Diane Tagliavini, and Cary Bissell. Alternatively, Defendants urge the Court to transfer this case to Massachusetts, where venue is proper, pursuant to 28 U.S.C. § 1404(a). While Defendants' Motion is styled as a Motion for Summary Judgment, it is in reality a motion to dismiss for improper venue, or, in the alternative, to transfer venue, as well as a motion for summary judgment. Pursuant to Rule 12(h) of the Federal Rules of Civil Procedure, such a motion is waived unless it is filed prior to the filing of a responsive pleading. Fed.R.Civ.P. 12(h) ("A motion [asserting the defense of improper venue] shall be made before pleading if a further pleading is permitted."). *See also Chilicky v. Schweiker,* 796 F.2d 1131, 1136 (9th Cir.1986) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1391, at 852–53 (1969)), *rev'd on other grounds,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Am. Motors Corp. v. FTC,* 601 F.2d 1329, 1331 n. 1 (6th Cir.1979), *cert. denied,* 444 U.S. 941, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); *Bodenhamer Bldg. Corp. v. Architectural Research Corp.,* 106 F.R.D. 521 (E.D.Mich.1985). However, a motion to dismiss pursuant to Rule 12(b) is not the

---

* The Motions are, in fact, motions for partial summary judgment as the parties seek resolution of only one of their claims.

1. The Motions are, in fact, motions for partial summary judgment as the parties seek resolution of only one of their claims.

same as a motion to transfer venue under 28 U.S.C. § 1404(a) and is therefore not subject to the waiver provisions of Rule 12(h). *James v. Norfolk & Western Ry. Co.*, 430 F.Supp. 1317 (S.D.Ohio 1976); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 272 (1990). Accordingly, the Court will consider Defendants' Motion only to the extent they seek to transfer the case pursuant to 28 U.S.C. § 1404(a).

Additionally, Defendants have argued that Tennessee law does not govern this case; therefore, they are entitled to summary judgment on Plaintiff's claim regarding a violation of the Tennessee Invention Development Act. Alternatively, Defendants contend that the Act violates their due process rights.

The relevant facts of this case are not in dispute. Plaintiff is an individual residing in Hermitage, Tennessee. He contracted with Defendant American Inventors Corporation ("AIC"), which has its principal office in Westfield, Massachusetts, to promote his adjustable push rod invention. Defendant AIC is in the business of developing and promoting inventions for its customers, and it receives a fee for doing so. Defendants Boulerice, Tagliavini, and Bissell are all agents and employees or officers of Defendant AIC.[2]

Plaintiff first learned of AIC through its advertisement in the Nashville *Real Yellow Pages*, in which Defendant AIC has advertised since at least the 1989–90 directory. Plaintiff then contacted Defendant AIC at the number listed in the *Real Yellow Pages*.

After this initial telephone call, Plaintiff received in the mail a letter dated June 17, 1991 from Defendant Tagliavini, as well as a blank disclosure form, confidentiality agreement, authorization agreement, and other materials. Plaintiff completed these forms and mailed them back to Defendants in Massachusetts on June 28, 1991. On July 1, 1991, Plaintiff paid to Defendant AIC, through a telephone-authorized charge against his credit card, a sum of $249.00 for a patentability search on his invention. Defendant AIC then mailed a letter back to Defendant in Tennessee acknowledging receipt of this payment. Accompanying the letter were patent office disclosure forms. Plaintiff completed these forms and mailed them back to Defendant AIC on July 8, 1991.

In late July 1991, Plaintiff and Defendant Bissell corresponded by telephone to schedule a meeting between Plaintiff and AIC representatives. Plaintiff later received a letter from Defendant Bissell confirming a meeting between the parties scheduled for August 8, 1991 in St. Louis, Missouri. Plaintiff and his wife drove to St. Louis on August 8, 1991 and met with Defendant Bissell. During the meeting, Plaintiff received a bound feasibility report with respect to his invention, as well as a "Representation Agreement" which had been filled in by representatives of Defendant AIC and signed by Defendant Bissell. At no time did Defendants provide Plaintiff with the information required by the Tennessee Invention Development Act.[3] After returning to Tennessee,

---

**2.** Defendants Tagliavini and Bissell were employees, agents, and representatives of Defendant AIC throughout the pre-contractual period, during which the events of which Plaintiff complains occurred. Defendant Boulerice is and was during that time the president and chief operating officer of Defendant AIC.

**3.** Specifically, Plaintiff avers that Defendants did not make or cause to be made the following disclosures:

(1) A statement that a portion of the fees charged would be paid as a commission or other similar payment to a person inducing, directly or indirectly, Plaintiff to contract for the services of Defendant AIC.
(2) A statement of the approximate amount of the fees charged that would be expended for services relating to patent matters.

(3) A statement of the estimated expenditures of Defendant AIC in excess of the fees received from Plaintiff.
(4) A single statement setting forth both:
 (a) the total number of customers who have contracted with Defendant AIC; and
 (b) the number of customers who have received by virtue of Defendant AIC's performance of its services, an amount of money in excess of the amount of money paid by such customers to Defendant AIC; and
(5) A statement as follows:
 Any contract for invention development services between you and our firm will be regulated by law. Our firm is not qualified or permitted to advise you whether protection of your idea or invention is available under the patent, copyright, or trademark laws of the United States or any other law. The contract does not provide any patent, copy-

Plaintiff signed the Representation Agreement and mailed it to Defendant AIC in Massachusetts along with a check for $8,490.00. By letter dated August 19, 1991, Defendant Bissell acknowledged receipt of the signed Representation Agreement and $8,490.00 from Plaintiff.

After an unsuccessful attempt by Defendant AIC to promote and sell Plaintiff's invention, Plaintiff brought this lawsuit claiming, in part, that Defendants' actions or omissions were in violation of the Tennessee Invention Development Act. Plaintiff then filed the present Motion, contending that there is no dispute as to any material fact regarding Defendants' violation of the Act, and therefore, they are entitled to summary judgment on that issue. Defendants responded and filed a cross-motion for summary judgment, arguing that the Act does not govern this case, and accordingly, they are entitled to summary judgment on that issue.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley,* 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

The Court will first address Defendants' request to transfer venue of this case to Massachusetts. It will then consider the issue of whether the Tennessee Invention Development Act is applicable to this case.

■ Section 1404(a) of Title 28, United States Code, permits the Court to transfer venue to another district where it might have been brought if it is necessary for the convenience of the parties and witnesses or the interests of justice. 28 U.S.C. § 1404(a) (1993). The burden is on the moving party to establish the need for a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215 (2d Cir.1978). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In deciding whether to transfer a case because the forum is inconvenient, courts have considered the following factors: (1) the location of willing and unwilling witnesses, (2) the residence of the parties, (3) the location of sources of proof, and (4) the location of the events that gave rise to the dispute. *Walker v. Consumers Power Co.,* 1990 WL 16387 (6th Cir.(Mich.)), *cert. denied,* 498 U.S. 815, 111 S.Ct. 55, 112 L.Ed.2d 30 (1990).

■ Weighing these factors, the Court finds that the balance is not struck so strongly in favor of Defendants to warrant upsetting Plaintiff's choice of forum in the Middle District of Tennessee. While it is true that the individual Defendants reside in Massachusetts and the corporate Defendant is headquartered there, equity suggests that venue in this Court should not be disturbed. With the exception of Plaintiff's meeting with Defendant Bissell in St. Louis, all of the operative pre-contractual activities that form the basis for Plaintiff's claim occurred via communication with Plaintiff in Tennessee. The operative facts of what Defendants communicated, or rather failed to communicate, were received by Plaintiff in Tennessee. Moreover, the operative documents were signed by Plaintiff in Tennessee.

right or trademark protection for your idea or invention. If your idea or invention is patentable, copyrightable, or subject to trademark protection, or infringes an existing valid patent, copyright, or trademark or a patent, copyright, or trademark for which application has been made, your failure to inquire into these matters may affect your rights to your idea or invention.

Furthermore, the Court does not find that the convenience of parties or witnesses dictates that this case be transferred to Massachusetts. Although Defendants reside in Massachusetts, Plaintiff and his wife, who may have information relevant to this case, reside in Tennessee. Additionally, as Plaintiff has noted, the corporate Defendant, with its profit of $248,690.00 from doing business in Tennessee, can absorb the costs of travel more easily than can Plaintiff, who is an individual. Accordingly, the Court finds that neither the convenience of the parties or witness nor the interests of justice suggest that transfer of venue in this case is appropriate.

Finding that venue is appropriate in the Middle District of Tennessee, the Court now must address whether Tennessee law is applicable to the present case. As Defendant has conceded that its actions or omissions were in violation of the relevant portions of the Tennessee Invention Development Act, resolution of this issue will resolve Plaintiff's claim.

■ A federal court sitting in a diversity case must apply the conflicts of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir.1983). Defendants argue that Tennessee choice of law rules dictate that in a breach of contract action courts should apply the law of the place where the contract was made. *Solomon v. FloWarr Management, Inc.*, 777 S.W.2d 701, 704–05 (Tenn.Ct.App.1989). Tennessee courts recognize only two excep-

tions to this general principle—(1) where the parties choose to be governed by the law of another state, and (2) the law of the place of performance will be applied in certain situations. *Id.* at n. 5 (citing *Deaton v. Vise*, 186 Tenn. 364, 210 S.W.2d 665, 668–69 (1948); and *Edgington v. Edgington*, 179 Tenn. 83, 162 S.W.2d 1082, 1086 (1942)). Defendants urge the Court not to apply Tennessee law as they assert that the contract was entered into in St. Louis and performed in Massachusetts and possibly other states.[4]

Defendants further rely upon the decision of the United States Court of Appeals for the Sixth Circuit in *Tele–Save Merchandising Co. v. Consumers Distrib. Co.*, 814 F.2d 1120 (6th Cir.1987), for the proposition that application of the law of another state will not violate the public policy of the State of Tennessee. In *Tele–Save*, the plaintiff, an Ohio corporation with its principal place of business in Columbus, brought suit against the defendant, a Canadian corporation with an office in New Jersey, charging the defendant with, among other things, violating the Ohio Business Opportunity Plans Act ("OBOPA"), which "regulates the sale of business opportunity plans and provides certain rights and remedies for Ohio purchasers who are defrauded by dishonest or negligent sellers." *Id.* at 1121. Similar to the Tennessee Invention Development Act, the OBOPA required certain disclosures to be made by sellers in connection with the sale of a business plan.[5] Using a contractual choice-of-law analysis, the Sixth Circuit held that the OBOPA was inapplicable to the transaction between the parties, despite the OBOPA's nonwaiver provision,[6] because the choice-of-law clause in

---

**4.** Notably, the contract was not singed by Plaintiff until he was in Tennessee. Therefore, Defendant's assertion that the contract was made in St. Louis appears incorrect. The contract did not become valid until Plaintiff signed it in Tennessee.

**5.** Specifically, the plaintiff in *Tele–Save* alleged that the defendant had violated the following sections of the OBOPA:

(1) Section 1334.02, which mandates that the seller provide a written disclosure statement in connection with the sale;

(2) Section 1334.03, which requires the seller to disclose information about potential sales, income, and profits, protects the buyer from

false and misleading statements, and also prohibits down payments in excess of twenty percent of the initial payment;

(3) Section 1334.06, which regulates cancellation procedures.

*Id.* at 1122.

**6.** Section 1334.15 of the OBOPA provided:

The remedies of sections 1334.01 to 1334.15 of the Revised Code are in addition to remedies otherwise available for the same conduct under federal, state, or local law. Any waiver by a purchaser of sections 1334.01 to 1334.15 of the Revised Code is contrary to public policy and is void and unenforceable.

*Id.* at 1122–23.

the contract stated that New Jersey law would apply. *Id.* at 1122–23. The Court upheld the choice-of-law clause, finding that the contacts between the parties were fairly and evenly divided between Ohio and New Jersey, the parties were of equal bargaining strength, and application of New Jersey law was not contrary to the public policy of Ohio. *Id.* at 1123. Consequently, Defendants urge this Court to apply a contractual choice-of-law analysis in determining that the Tennessee Invention Development Act is inapplicable to the present case because the contract between the parties was neither made nor performed in Tennessee.

Conversely, Plaintiff argues that the Court should not use a contractual choice-of-law analysis because Defendant's duty to make the disclosures arises out of statutory law rather than the contract between the parties. "When liability arises from a 'breach of duty imposed by statute or case law and not by contract' the liability is in tort." *Jacobs v. FDIC,* 638 F.Supp. 214, 215 (E.D.Tenn.1986) (characterizing an action for breach of the duty to dispose of collateral in a commercially reasonable manner as a tort action rather than a breach of contract action because although the claim was related to a security agreement the duty arose out of a statute rather than the agreement) (quoting *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.,* 592 F.2d 364, 369 (7th Cir.1979), *cert. denied,* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37)). *See also McInnis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 706 F.Supp. 1355 (M.D.Tenn.1989), *superseded on other grounds,* 821 F.Supp. 1243 (M.D.Tenn.1992) (holding that a choice-of-law provision in a contract was not applicable to the plaintiff's claim based on a blue-sky statute). Accordingly, Plaintiff asserts that the choice of law decision concerning the violations of the Tennessee Invention Development Act should be governed by a tort analysis. Presently, under Tennessee choice-of-law rules, the law of the state having the most significant relationship to the occurrence and the parties will be applied to the case. *Hataway v. McKinley,* 830 S.W.2d 53, 59–60 (Tenn.1992). Plaintiff argues that since the non-complying communications occurred in Tennessee, the law of the State of Tennessee should be applied ·in this case.

 The Court agrees with Plaintiff that the choice of law decision regarding violations of the Act should be governed by a tort analysis. This claim does not arise out of the contract but out of a statutory obligation. *See Mackey v. Judy's Foods, Inc.,* 867 F.2d 325 (6th Cir.1989) (applying Tennessee law to a claim under the Tennessee Consumer Protection Act while applying Alabama law to the breach of contract claim that arose out of the same events). In determining which state has the most significant relationship to the occurrence and the parties, and thus which state's law should be applied, the Court must consider the following factors:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties,

(d) the place where the relationship, if any, between the parties is centered.

*Hataway,* 830 S.W.2d at 59 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). Obviously, the injury occurred in Tennessee because Plaintiff resided in Tennessee and he is the one who is alleged to have been injured by Defendants' failure to disclose. Since the tort alleged is a tort of omission, it is difficult to state where that action causing the injury occurred. The Court finds that the violations of the Tennessee Invention Development Act alleged are analogous to a claim of fraud in that the loss sustained by fraud is similar to the loss sustained by the omission of a material statement. Under Tennessee law, "[w]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." *Bailey v. Chattem, Inc.,* 684 F.2d 386, 392 (6th Cir.1982) (citing Restatement of Conflict of Laws § 377, Note 4 (1934)). Thus, the Court finds that the action causing the injury occurred in Tennessee. While Defendants reside, are domiciled, and/or are incorporated in Massachusetts, Plaintiff resides in Tennessee. Consequently, weighing these factors,

the Court finds that Tennessee bears the most significant relationship ·to the events and parties in the present case, and therefore, the Tennessee Invention Development Act is applicable in the present case. As Defendants have conceded that their actions were in violation of the Act, the Court finds that they are liable for the damages provided therein.

Finally, Defendants have attacked the constitutionality of the Tennessee Invention Development Act. First, they contend that the Act violates their due process rights because the State of Tennessee does not have sufficiently significant contacts with this transaction to create a state interest in the transaction such that the choice of Tennessee law would be neither arbitrary nor fundamentally fair. *See Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Defendants argue that it is fundamentally unfair for the State of Tennessee to regulate the activities of a Massachusetts corporation which operates substantially in states other than Tennessee. The Court finds, however, that Defendants' actions of advertising in Tennessee and soliciting Plaintiff via telephone and mail in Tennessee are sufficiently significant to justify the application of Tennessee law in this case. The legislative history of the Act reveals the purpose of the Act, which is the State of Tennessee's strong interest in protecting its citizenry from unscrupulous invention developers.

■ Next, Defendants assert that the Act is unconstitutional in that it provides for the taking of property without due process because it provides for the recovery of treble damages without the requirement of proving willful or reckless conduct by the defendant and permits a restitutionary remedy against agents of a corporation who are not themselves parties to the contract subject to recision. Defendants cite the court's decision in *Koehler v. Cummings,* 380 F.Supp. 1294 (M.D.Tenn.1971) for the proposition that imposition of treble damages under the Act is unconstitutional. The court in *Koehler,* however, did not address the issue of the constitutionality of the treble damage provision at issue in the case. It merely stated that the treble damage provision is a "statutory enactment of the common law tort action, expressly setting treble damages *in lieu of* punitive damages." *Id.* at 1305 (emphasis added).[7] In the present case, there is no support for the proposition that the treble damages provision was enacted in lieu of punitive damages, thus requiring it to be based upon willful or reckless conduct. *See Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896 (Tenn.1992). Accordingly, the Court finds that the Act's treble damages provision does not violate Defendants' due process rights.

■ Defendants Boulerice, Tagliavini, and Bissell also argue that their due process rights have been violated because the Act permits a restitutionary remedy against agents of a corporation who are not themselves parties to the contract subject to remission. As the Court has noted previously, however, the Act requires invention developers, whether they be agents, employees, or representatives of a business, or the business itself, to disclose certain facts. It does not require those facts to be disclosed within the contract itself. Consequently, the liability of Defendants Boulerice, Tagliavini, and Bissell is based not on the contract but on the Act. Therefore, the fact that they are not parties to the contract in no way prevents them from being liable to Plaintiff for treble damages. Accordingly, the Court finds that the Act does not violate Defendants' due process rights.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is hereby GRANTED, and Defendant's Motion for Summary Judgment, which the Court has also treated as a motion to dismiss for improper venue, or, in the alternative, to transfer venue, is hereby DENIED. Accordingly, Plaintiff is to be awarded damages on Count I of his Complaint in an amount ·equal to

---

**7.** *See also Edwards v. Travelers Ins. of Hartford, Connecticut,* 563 F.2d 105 (6th Cir.1977), a subsequent case involving the same treble damages provision at issue in *Koehler,* in which the Sixth Circuit stated that the award of treble damages was mandatory under the statute once a violation was proven.